RILEY SAFER HOLMES & CANCILA LLP
STEPHEN M. HANKINS (CSB No. 154886)
shankins@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

RILEY SAFER HOLMES & CANCILA LLP
LOUIS A. KLAPP (*pro hac vice application forthcoming*)
lklapp@rshc-law.com
MICHAEL H. FLECK (*pro hac vice application forthcoming*)
mfleck@rshc-law.com
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Facsimile: (312) 471-8701

Attorneys for Plaintiff
BREATHE TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREATHE TECHNOLOGIES, INC., | Case No.  3:19-cv-7691 |
| Plaintiff, | **COMPLAINT FOR** |
| v. | 1.  **PATENT INFRINGEMENT** |
| NEW AERA, INC.; SILVERBOW DEVELOPMENT LLC; INOGEN, INC.; and TODD W. ALLUM, | 2.  **CORRECTION OF INVENTORSHIP** |
| | 3.  **DECLARATION OF RIGHTS IN PATENTS** |
| Defendants. | 4.  **BREACH OF CONTRACT** |
| | 5.  **INDUCING BREACH OF CONTRACT** |
| | 6.  **INTERFERENCE WITH CONTRACT** |
| | 7.  **VIOLATION OF CAL. BUS & PROF. CODE SECTION 17200** |
| | **DEMAND FOR JURY TRIAL** |

1.     Plaintiff Breathe Technologies, Inc. ("Breathe"), by and through its attorneys, and for its Complaint against New Aera, Inc. ("New Aera"), Silverbow Development LLC ("Silverbow"), Inogen, Inc. ("Inogen"), and Todd W. Allum (collectively, "Defendants"), hereby alleges as follows:

## I.     INTRODUCTION

2.     This is an action for patent infringement, correction of inventorship of a patents, declaration of rights with respect to ownership of patents, breach of contract, inducing breach of contract, tortious interference with contract, and unfair competition.

## II.     PARTIES

3.     Breathe is a Delaware corporation with its principal place of business at 15091 Bake Parkway, Irvine, California. Breathe is a provider of wearable noninvasive ventilation solutions for patients with respiratory disorders.

4.     New Aera is a Delaware corporation with its principal place of business at 2400 Camino Ramon, Suite 365, San Ramon, California. New Aera is a provider of wearable noninvasive ventilation solutions for patients with respiratory disorders.

5.     Silverbow is a Delaware limited liability company with its principal place of business at 2400 Camino Ramon, Suite 365, San Ramon, California. Silverbow is an affiliate of New Aera, and Silverbow claims ownership of at least one United States Patent related to noninvasive ventilation technology.

6.     Inogen is a Delaware corporation with its principal place of business at 326 Bollay Drive, Goleta, California. New Aera is a wholly owned subsidiary of Inogen.

7.     Mr. Allum is an individual and a former employee of Breathe. On information and belief, Mr. Allum resides in Livermore, California and is a current employee of New Aera and of Silverbow.

## III.     JURISDICTION, VENUE, & INTRADISTRICT ASSIGNMENT

8.     This Court has subject matter jurisdiction over Breathe's claims under United States Patent Laws, Title 35, including 35 U.S.C. §§ 256 and 271 pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over Breathe's claims for declaratory

judgment of patent ownership pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

9.      Inogen and New Aera have a regular and established place of business in San Ramon, which is within this Judicial District. In addition, Inogen and New Aera have committed acts of infringement at the San Ramon location, including using the system accused of infringement at that location. Therefore, venue for the patent infringement claim lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1400(b).

10.     Inogen, New Aera, Silverbow, and Mr. Allum reside in this judicial district, and all Defendants are residents of the State of California. In addition, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in Contra Costa County, which is in this judicial district. Therefore, venue for the claims other than patent infringement lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

11.     A substantial part of the events giving rise to the claims alleged in this Complaint occurred in Contra Costa County. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this intellectual property action will be assigned on a districtwide basis.

## IV.     FACTUAL ALLEGATIONS

### A.     Breathe's Noninvasive Ventilation System

12.     Breathe developed the first truly wearable ventilator system, which is used by patients suffering from certain respiratory conditions such as chronic obstructive pulmonary disease. The system provided mechanical ventilation while allowing the patient to be mobile and to engage in activities of daily living.

13.     A range of respiratory disorders afflict patients. More severe forms of such disorders require mechanical ventilation (MV) therapies, which mechanically contribute to the work of breathing. Less severe forms can be treated by oxygen therapies, which provide air with a higher-than-normal concentration of oxygen to the patient, but which do not mechanically contribute to the work of breathing.

14. Traditional MV therapies are obtrusive and/or invasive to the patient. For example, some include a mask that seals over a patient's nose and mouth and deliver gas to the mask through large tubing connected to a stationary ventilator. While receiving this treatment, the patient must be immobile, and thus cannot reasonably engage in activities of daily living. Relative to MV therapies, oxygen therapy is less obtrusive, and a patient can receive it while mobile. But it is helpful only to patients with less severe disorders, as it does not contribute to the mechanical work of breathing.

15. Breathe pioneered a system with the functionality of traditional MV therapies but with the mobility of traditional oxygen therapies.

16. Today, Breathe's noninvasive ventilation system ("Breathe System") is available in several configurations, each of which incorporates (i) a Breathe ventilator; (ii) a source of compressed gas, such as Breathe's compressor; and (iii) a Breathe patient interface.

17. Today's Breathe System was created by Breathe over years of research and development activity.

18. Breathe was founded in 2005. Gregory Kapust served as Breathe's Chief Executive Officer.

19. By 2008, Breathe was focused on developing new solutions for noninvasive ventilation. In 2008, Breathe hired engineering personnel, including Mr. Allum, to advance Breathe's noninvasive ventilation goals. Mr. Allum was the Mechanical Engineering Manager at Breathe.

**B.     Breathe's '250 Patent**

20. By September 3, 2010, Breathe had filed numerous provisional and non-provisional patent applications on its technology, including U.S. Patent Application No. 12/876,098, which would ultimately issue as U.S. Patent No. 9,132,250 ("the '250 patent").

21. On September 15, 2015, the United States Patent and Trademark Office duly and legally issued the '250 patent, entitled "Methods, Systems and Devices for Non-Invasive Ventilation Including a Non-Sealing Ventilation Interface With an Entrainment Port and/or Pressure Feature" to Breathe Technologies, Inc. A true and correct copy of the '250 patent is

attached to this Complaint as Exhibit 1.

22.     Mr. Allum and Mr. Kapust, among others, are listed as inventors on the '250 patent.

23.     Breathe is the assignee of the entire right, title, and interest in the '250 patent.

24.     Claim 1 of the '250 Patent recites:

> A system for providing ventilatory support comprising:
>     a gas source;
>     a gas delivery circuit;
>     a nasal interface adapted to allow a patient to breathe ambient air through the nasal interface;
>     a gas flow path through the nasal interface, wherein the gas flow path comprises a distal end gas flow path opening;
>         a nozzle positioned on a proximal end of the nasal interface at a distance from the distal end gas flow path opening; and
>         an entrainment port associated with the nasal interface, wherein at least a portion of the entrainment port is between the nozzle and the distal end gas flow opening,
>         wherein the nozzle is in fluid communication with the gas delivery circuit and the gas source,
>         wherein the nozzle delivers gas into the nasal interface to create a negative pressure area in the gas flow path at the entrainment port,
>         wherein the nasal interface and the nozzle create a positive pressure area between the entrainment port and the distal end gas flow path, and
>         wherein a combination of gas from the gas source and air entrained through the entrainment port provide ventilatory support.

25.     The Breathe System is a commercial embodiment of the '250 patent.

**C.     Breathe's Nozzle Research**

26.     In or around 2010 and 2011, Breathe investigated nozzle designs and configurations that could offer desirable noise-reduction and entrainment performance ("the Nozzle Project"). The Nozzle Project included research and development related to the incorporation of a so-called "daisy nozzle" in a small, noninvasive ventilation interface.

27.     All inventions, developments, improvements, designs, and discoveries conceived during the Nozzle Project, including those related to the incorporation of a daisy nozzle ("Daisy Nozzle Concept"), belonged to Breathe.

28.     Several Breathe employees and consultants worked on Breathe's Nozzle Project,

including Mr. Allum and Richard Lyon. Dr. Lyon was a Breathe consultant, acoustics expert, and professor emeritus of mechanical engineering at the Massachusetts Institute of Technology.

29.     The Daisy Nozzle Concept was jointly conceived, developed, and reduced to practice during the Nozzle Project by at least Mr. Allum and Dr. Lyon.

30.     The relevant employees and consultants who worked on the Nozzle Project, including Dr. Lyon and Mr. Allum, assigned any and all rights in the Daisy Nozzle Concept to Breathe via their employment or consulting agreements with Breathe.

31.     Breathe has the exclusive right to determine whether, when, and how to seek patent claims incorporating the Daisy Nozzle Concept and to determine whether, when, and how to incorporate the Daisy Nozzle Concept into a commercial product.

**D.      Mr. Allum's Employment Agreement With Breathe and Mr. Lyon's Consulting Agreement With Breathe**

32.     Todd Allum was employed by Breathe from June 2008 to September 2011.

33.     On June 16, 2008, Mr. Allum entered into an At Will Employment Confidential Information, Invention Assignment, and Arbitration Agreement with Breathe ("Allum Employment Agreement"). A copy of the Allum Employment Agreement is attached as Exhibit 2.

34.     By signing the Allum Employment Agreement, Mr. Allum assigned to Breathe all inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during the Nozzle Project.

35.     By signing the Allum Employment Agreement, Mr. Allum agreed to assist Breathe in securing Breathe's rights in the Daisy Nozzle Concept, including signing any instruments Breathe deemed necessary in order to secure such rights. Mr. Allum agreed that his obligation to execute such instruments would continue after the termination of his employment with Breathe.

36.     On October 6, 2010, Dr. Lyon entered into a Consulting Agreement with Breathe ("Lyon Consulting Agreement"). A copy of the Lyon Consulting Agreement is attached as Exhibit 3.

37.     By signing the Lyon Consulting Agreement, Dr. Lyon assigned to Breathe all inventions, developments, improvements, designs, and discoveries conceived, discovered,

- 6 -

developed or reduced to practice by him, solely or in collaboration with others, during the Nozzle Project.

38.     The employment and consulting agreements of the relevant employees and consultants who worked on the Nozzle Project other than Mr. Allum and Dr. Lyon contained invention assignment clauses substantially similar to those in Mr. Allum's or Dr. Lyon's agreements.

39.     The Daisy Nozzle Concept is an invention, development, improvement, design, or discovery conceived during the Nozzle Project.

**E.     New Aera, Silverbow, and Inogen's Purported Noninvasive Ventilation Products and Technology**

40.     Mr. Kapust's employment with Breathe ended in June 2010. Mr. Kapust founded or cofounded New Aera and Silverbow in 2011, and he served as Chief Executive Officer of each entity.

41.     Mr. Allum's employment with Breathe ended in September 2011. Mr. Allum became an employee of New Aera and Silverbow in April 2012, and he served as Vice President of Technology of each entity. Mr. Allum is a cofounder of New Aera.

42.     In 2018, New Aera brought to market a noninvasive ventilator system sold in conjunction with the phrase Sidekick TAV Tidal Assist Ventilator ("New Aera System"). The New Aera System's commercial release was announced at the May 16–18, 2018, Conference of the California Society of Pulmonary Rehabilitation in San Diego, California. The following image is the introductory frame of a video posted by SIDEKICK TAV to YouTube, available at https://www.youtube.com/watch?v=kuVLicrR6HM:



43.    Certain patients (e.g., those capable of spontaneous breathing) who have been prescribed a portable ventilator system by their treating physician could be furnished with either the New Aera System or the Breathe System. Although the Breathe System, unlike the New Aera System, is designed and covered by insurance for use by patients incapable of spontaneous breathing, the Breathe System is also prescribed for, covered by insurance for, and able to be used by, the same patients capable of spontaneous breathing who could use the New Aera System. Under these circumstances, such patients use, and medical suppliers sell, the New Aera System as an alternative to the Breathe System.

44.    Silverbow has filed, and continues to file, patent applications that, on information and belief, sought to patent inventions purportedly related to Mr. Allum's and Mr. Kapust's work developing the New Aera System.

45.    For example, on August 20, 2019, the United States Patent and Trademark Office issued U.S. Patent No. 10,384,028 ("the '028 patent"), which listed Todd W. Allum and Gregory J. Kapust as the purported inventors and listed Silverbow Development, LLC as the purported assignee.

46.    On February 12, 2019, U.S. Patent Application No. 16/275,255 ("the '255 application") was filed as a continuation of the application giving rise to the '028 patent. The disclosure of the '255 application is substantially the same as the disclosure of the '028 patent. Mr. Kapust and Mr. Allum are listed as inventors of the '255 application. According to USPTO

1   records, Silverbow Development, LLC is the purported assignee of the '255 application.

2        47.    On June 12, 2018, the United States Patent and Trademark Office issued U.S.

3   Patent No. 9,995,645 ("the '645 patent"), which listed Todd W. Allum as the purported inventor

4   and listed Silverbow Development, LLC as the purported assignee.

5        48.    On June 12, 2018, U.S. Patent Application No. 16/006,699 ("the '699 application")

6   was filed as a continuation of the application giving rise to the '645 patent. The disclosure of the

7   '699 application is substantially the same as the disclosure of the '645 patent. The '699

8   application lists Todd W. Allum as the purported inventor. According to USPTO records,

9   Silverbow Development, LLC is the purported assignee of the '699 application.

10        49.    The '028 patent, the '255 application, the '645 patent, and the '699 application,

11   and any other purported Silverbow patents that incorporate Breathe's Daisy Nozzle Concept are

12   collectively referred to as "the Silverbow Daisy Nozzle Patents."

13        50.    Breathe regularly monitored public patent databases, including for activities of

14   companies Breathe had identified as sources of actual or potential competing technologies.

15   According to public records, Silverbow has never made, sold, or marketed any products. Breathe

16   began monitoring patent activity related to Silverbow, Mr. Allum, and Mr. Kapust on November

17   24, 2015, one day after a Breathe employee discovered a published Silverbow patent application.

18        51.    Pursuant to an August 6, 2019, Agreement and Plan of Merger ("New Aera

19   Acquisition Agreement"), New Aera became a wholly owned subsidiary of Inogen.

20        52.    In conjunction with the performance of the New Aera Acquisition Agreement,

21   Inogen and Silverbow executed an IP Acquisition Agreement. On information and belief, Inogen

22   received rights to the Silverbow Daisy Nozzle Patents and/or benefits from the commercialization

23   of those patents as alleged herein.

24       **F.**    **New Aera's and Inogen's Infringement of the '250 Patent**

25        53.    New Aera and Inogen directly infringe at least claim 1 of the '250 patent in

26   violation of § 271(a) by making, having made, using, selling, or offering for sale the New Aera

27   System in the United States, including in this judicial district.

28        54.    The New Aera System includes, among other things, a nasal interface, a gas

- 9 -

delivery circuit, and a gas source. The nasal interface includes entrainment ports that enable a patient wearing the nasal interface to breath ambient air through the nasal interface. In addition, the nasal interface includes a nozzle in fluid communication with the gas delivery circuit and the gas source. As a result, a combination of gas from the gas source and air entrained through the entrainment ports provide ventilatory support to the patient.

55.     As shown in the claim chart attached as Exhibit 4, the New Aera System meets each and every element of at least claim 1 of the '250 patent, literally or under the doctrine of equivalents.

56.     As a first example of New Aera's and Inogen's direct infringement, they have offered for sale to patients in the United States a system comprising their Nasal Pillows Interface, TAV Controller, TAV compatible oxygen concentrator, and Supply Tubing connecting the ventilator to the oxygen concentrator.

57.     As a second example of New Aera's and Inogen's direct infringement, they have used in testing and demonstrations in the United States a system comprising their Nasal Pillows Interface, TAV Controller, TAV compatible oxygen concentrator, and Supply Tubing connecting the ventilator to the oxygen concentrator.

58.     New Aera and Inogen indirectly infringe at least claim 1 of the '250 patent in violation of § 271(b) and (c) by inducing or contributing to third parties' making, having made, using, selling, or offering for sale the New Aera System in the United States, including in this judicial district.

59.     New Aera and Inogen contributorily infringe at least claim 1 of the '250 patent by making, selling or offering to sell material components of the New Aera System that are especially made and adapted for use in the infringing system and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

60.     As an example of New Aera's and Inogen's contributory infringement, the Nasal Pillows Interface of the New Aera System is especially made and adapted for infringing use with other components of the New Aera System because the Nasal Pillows Interface is especially adapted to allow a patient to breath ambient air through the nasal interface, to deliver gas via a

nozzle positioned on a proximal end of the nasal interface, and to provide ventilatory support with a combination of gas from a gas source and air entrained through an entrainment port. Moreover, the Nasal Pillows Interface of the New Aera System is not a staple article or commodity of commerce suitable for substantial non-infringing use because it has no other use than as being a material part of the infringing New Aera System.

61.     New Aera had knowledge of the '250 patent and knew that the components it sold for the New Aera System were especially made or adapted for infringing the '250 patent. Mr. Kapust is a named inventor of the '250 patent and former Chief Executive Officer of Breathe. Mr. Allum is also a named inventor of the '250 patent and was previously employed by Breathe. Mr. Kapust and Mr. Allum left Breathe to work for New Aera. Subsequently, New Aera began selling the New Aera System. Thus, through Mr. Kapust and Mr. Allum, New Aera knew that the New Aera System met each and every element of at least claim 1 of the '250 patent. Upon acquiring New Aera, Inogen gained such knowledge.

62.     As a result, New Aera and Inogen also knew and know that patients who use the New Aera System in the United States have been and are directly infringing at least claim 1 of the '250 patent in violation of § 271.

63.     New Aera and Inogen induce infringement of at least claim 1 of the '250 patent by actively and knowingly inducing patients to use the infringing New Aera System in the United States.

64.     As an example of their inducing infringement, New Aera and Inogen specifically intend for patients to infringe at least claim 1 of the '250 patent by assembling the components of the infringing New Aera System in the United States. New Aera and Inogen enclose in the New Aera System packaging detailed instructions ("NA Instructions") for the assembly and use of the New Aera System.

65.     The NA Instructions provide patients with step-by-step, mandatory directions to assemble the components of the New Aera System (Exhibit 5 at 6-9), don the nasal pillow interface (*id.* at pg. 10), and then use the New Aera System to provide oxygen to the patient (*id.* at 11-15).

66.     New Aera and Inogen knowingly induce infringement by patients and possessed specific intent to encourage patients' infringement. Through Mr. Kapust and Mr. Allen, New Aera knew that patients who use the New Aera System in the United States in accordance with the NA Instructions have been and are directly infringing at least claim 1 of the '250 patent in violation of § 271. Inogen gained this knowledge upon acquiring New Aera. Thus, New Aera and Inogen provided the NA Instructions to patients with the specific intent to encourage the patients to assemble and use the New Aera System and knew that the patients' assembly and use of the New Aera System constituted infringement of at least claim 1 of the '250 patent.

67.     New Aera and Inogen willfully infringe at least claim 1 of the '250 Patent by making, selling, and offering for sale the New Aera System in the United States despite their knowledge of the '250 patent and its infringement. New Aera and Inogen knew that they have been and are directly infringing at least claim 1 of the '250 patent in violation of § 271 by making, having made, using, selling, or offering for sale the New Aera System in the United States. Such actions were deliberate, intentional, and in willful disregard of Breathe's patent rights. Moreover, the utilization of Breathe's Daisy Nozzle Concept in the New Aera System demonstrates New Aera was consciously wrongful and wanton in its infringement.

**G.     Silverbow's Purported Patents and the New Aera System Use Breathe's Daisy Nozzle Concept**

68.     The image below shows a drawing from notes distributed to Breathe's employees on or around March 9, 2011, including to Mr. Allum, from Dr. Lyon as part of the Nozzle Project.



69.     Numerous Silverbow patents and patent applications incorporate Breathe's Daisy Nozzle Concept.

70.     For example, the claims of Silverbow's purported '028 patent and '255 application comprise the Daisy Nozzle Concept. Claim 1 of the '028 patent is reproduced below:

> A nasal interface apparatus for use with a respiratory device that doses compressed gas from a compressed gas source, the apparatus comprising:
>
> a pair of hub assemblies for receiving the compressed gas, each hub assembly having a plurality of air apertures through which ambient air is permitted to flow and a plurality of openings configured to deliver the compressed gas within an outlet flow area defined along a perimeter that runs proximate to the plurality of air apertures such that substantially all of the compressed gas is delivered along the perimeter;
>
> and a pair of nasal pillows, wherein each nasal pillow has a tubular structure with a first end and a second end, and wherein a respective hub assembly is positioned within the first end of each nasal pillow.

71.     The image below is a figure from the '028 patent and the '255 application showing the gas delivery openings of an embodiment disclosed in that patent and application.



72.     The claims of Silverbow's purported '645 patent and '699 application comprise the Daisy Nozzle Concept. For example, claim 14 of the '645 patent recites "wherein the at least one outlet disc includes a plurality of outlet holes through which buffered gas escapes for delivery to the user."

73.     The image below is a figure from the '645 patent and the '699 application showing the gas delivery openings of an embodiment disclosed in that patent and application.



74.    The New Aera System comprises the Daisy Nozzle Concept.

75.    The image below shows the gas delivery openings in the New Aera System's Nasal Pillow Interface.



76.    New Aera and Silverbow knew that Mr. Allum had entered into the Allum Employment Agreement while employed at Breathe, and they knew that the agreement caused Mr. Allum to assign to Breathe all inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during the Nozzle Project, including the Daisy Nozzle Concept. For example, Mr. Allum was an executive at New Aera and Silverbow, and Mr. Allum was aware of his own agreement with Breathe. As another example, Mr. Kapust was an executive at New Aera and Silverbow, knew that Mr. Allum was previously an employee at Breathe, knew that Mr. Allum signed the Allum Employment Agreement, and was aware of Breathe's practice of requiring its employees to sign employment agreements with terms the same as or substantially similar to those in the Allum Employment Agreement.

77.     On information and belief, New Aera and Silverbow had incentives to patent and bring a product to market as quickly and as cheaply as possible, and in a manner that would maximize the value of the companies which created time pressures and financial incentives that caused Mr. Allum to incorporate Breathe's Daisy Nozzle Concept into Silverbow Daisy Nozzle Patents and the New Aera System.

78.     On information and belief, New Aera and Silverbow gave Mr. Allum financial benefits stemming from the time and cost savings realized through the incorporation of the Daisy Nozzle Concept.

79.     Inogen purchased New Aera after Breathe's Daisy Nozzle Concept was incorporated into Silverbow Daizy Nozzle Patents and the New Aera System. Public records reflect that Inogen paid approximately $70,000,000 to acquire New Aera, and, on information and belief, Mr. Allum received a portion of that amount. On information and belief, New Aera would not have been purchased or would have been purchased at a lower amount had the Daisy Nozzle Concept not been incorporated in the development of the New Aera System and the Silverbow Daisy Nozzle Patents.

80.     On information and belief, Inogen purchased rights in Silverbow's purported intellectual property, including Silverbow Daisy Nozzle Patents, after Breathe's Daisy Nozzle Concept was incorporated into Silverbow Daisy Nozzle Patents. On information and belief, Mr. Allum received a portion of that amount. On information and belief, Silverbow's purported intellectual property would not have been purchased or would have been purchased at a lower amount had the Daisy Nozzle Concept not been used in the development of Silverbow's purported intellectual property.

**H.     Mr. Allum breached his contractual duty to assist Breathe in securing its ownership interests in Silverbow Daisy Nozzle Patents**

81.     Prior to the filing of this Complaint, pursuant to the Allum Employment Agreement, Breathe sent Mr. Allum a request to sign documentation Breathe deemed necessary to confirm its rights in the Nozzle Project and secure its rights in Silverbow Daisy Nozzle Patents and any inventions, developments, improvements, designs, and discoveries conceived, developed,

or reduced to practice by him, solely or jointly with others, during the Nozzle Project. Mr. Allum has not executed and returned the documentation in breach of his contractual obligations.

82.     On information and belief, New Aera, Silverbow, and Inogen encouraged and instructed Mr. Allum to act in a fashion inconsistent with his contractual obligations which have contributed to his aforementioned breaches of the Allum Employment Agreement.

**FIRST CLAIM FOR RELIEF**

**Infringement of United States Patent No. 9,132,250**

**(Against New Aera and Inogen)**

83.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 82.

84.     This is a claim for patent infringement under 35 U.S.C. § 271.

85.     New Aera and Inogen have directly infringed, contributorily infringed, and induced infringement of the '250 Patent.

86.     New Area's and Inogen's infringement have damaged and injured, and continue to damage and injure, Breathe.

87.     The injury to Breathe from New Aera and Inogen's continuing infringement is irreparable and will continue unless and until New Aera and Inogen are enjoined from further infringement.

88.     New Aera has had actual knowledge of the '250 patent and of its infringement since the patent's issuance, yet New Aera has continued infringing the patent. Inogen has had actual knowledge of the '250 patent and of its infringement since acquiring New Aera, yet Inogen has continued infringing the patent.

89.     New Aera's and Inogen's willful and deliberate infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284 and further qualifies this action as an exceptional case supporting an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

**SECOND CLAIM FOR RELIEF**

**Correction of Inventorship of U.S. Patents Purportedly owned by Silverbow**

**(Against Silverbow)**

90.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 89.

91.     Silverbow's purported patents that have claims incorporating the Daisy Nozzle Concept, including the Silverbow Daisy Nozzle Patents, fail to identify the correct inventors.

92.     At least the '028 and '645 patents incorporate the Daisy Nozzle Concept.

93.     At least Dr. Lyon collaborated with Mr. Allum in jointly conceiving, developing, and reducing to practice the Daisy Nozzle Concept during the Nozzle Project prior to the filing of the applications that lead to the issuance of the '028 and '645 patents.

94.     Correction of inventorship is necessary at least because Dr. Lyon's contributions to the '028 and '645 patents were material, so he should have been included as a named inventor on the '028 patent, the '645 patent, and any other purported Silverbow patents that incorporate the Breathe Daisy Nozzle Concept, but he was not.

95.     This Court should issue an order pursuant to 35 U.S.C. § 256 directing the Director of the United States Patent and Trademark Office to correct the inventorship of Silverbow Daisy Nozzle Patents and any other purported Silverbow patent that includes a claim incorporating the Breathe Daisy Nozzle Concept.

**THIRD CLAIM FOR RELIEF**

**Declaratory Relief – Rights to Silverbow Daisy Nozzle Patents**

**(Against Silverbow, New Aera, and Inogen)**

96.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 95.

97.     The '028 patent issued on August 20, 2019. Silverbow filed documents with the patent office claiming to be the assignee of the '028 patent, and Silverbow is listed as the assignee on the face of the patent.

98.     On February 12, 2019, the '255 application was filed as a continuation of the

- 17 -

application giving rise to the '028 patent. Mr. Kapust and Mr. Allum are listed as inventors of the '255 application. Silverbow filed documents with the patent office claiming to be the assignee of the '255 application.

99.    On June 12, 2018, the United States Patent and Trademark Office issued the '645 patent, which listed Todd W. Allum as the purported inventor and listed Silverbow Development, LLC as the purported assignee.

100.    On June 12, 2018, the '699 application was filed as a continuation of the application giving rise to the '645 patent. The '699 application lists Todd W. Allum as the purported inventor. According to USPTO records, Silverbow Development, LLC is the purported assignee of the '699 application.

101.    On information and belief, Silverbow entered into a license with New Aera that purported to give New Aera the exclusive right to practice the Silverbow Daisy Nozzle Patents.

102.    In conjunction with the New Aera Acquisition Agreement, Inogen entered into an IP Acquisition Agreement with Silverbow. On information and belief, pursuant to such IP Acquisition Agreement, Silverbow purported to transfer some or all its ownership interest in the Silverbow Daisy Nozzle Patents to Inogen.

103.    Since Inogen's acquisition of New Aera, Inogen has not filed any document at the U.S. Patent and Trademark Office claiming to be the assignee of any Silverbow Daisy Nozzle Patents, and Silverbow remains the purported owner of record at the Office.

104.    Mr. Allum is listed as a named inventor of each of the Silverbow Daisy Nozzle Patents.

105.    The Silverbow Daisy Nozzle Patents incorporate Breathe's Daisy Nozzle Concept.

106.    Mr. Allum solely or jointly conceived, developed, or reduced to practice the Daisy Nozzle Concept while employed at Breathe. Pursuant to the Allum Employment Agreement, the Daisy Nozzle Concept automatically transferred from Mr. Allum to Breathe.

107.    Because all of Mr. Allum's rights to the Silverbow Daisy Nozzle Patents were automatically assigned to Breathe, Breathe is the rightful owner of the Silverbow Daisy Nozzle Patents.

108.    An actual controversy exists between Breathe on the one hand and Silverbow, New Aera, and Inogen on the other with respect to ownership of each Silverbow Daisy Nozzle Patent. Breathe contends that Breathe is a rightful owner of each Silverbow Daisy Nozzle Patent, and Silverbow, New Aera, and Inogen dispute this contention at the very least by asserting their rights to the Silverbow Daisy Nozzle Patents.

109.    Breathe is entitled to a declaration that Breathe is an owner of the Silverbow Daisy Nozzle Patents.

110.    Breathe is also entitled to an order that Silverbow, New Aera, Inogen, or Mr. Allum execute any necessary documents to confirm formally Breathe's ownership and clarify the chain of title of the Silverbow Daisy Nozzle Patents.

**FOURTH CLAIM FOR RELIEF**

**Breach of Contract**

**(Against Mr. Allum)**

111.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 110.

112.    Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract.

113.    Breathe performed all or substantially all its obligations under the Allum Employment Agreement, including compensating Mr. Allum for his employment.

114.    The Allum Employment Agreement required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept, and Mr. Allum has failed to do so.

115.    Breathe was harmed by Mr. Allum's breach of contract, as it has hindered formal recognition of Breathe's ownership interest in Silverbow Daisy Nozzle Patents.

116.    Mr. Allum's failure to perform his obligations under the Allum Employment Agreement has caused and continues to cause irreparable harm to Breathe, for which monetary compensation alone is insufficient, and for which injunctive relief, including an order compelling specific performance, is the appropriate remedy.

**FIFTH CLAIM FOR RELIEF**

**Inducing Breach of Contract**

**(Against New Aera, Silverbow, and Inogen)**

117.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 116.

118.    Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract, and which required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept.

119.    New Aera, Silverbow, and Inogen were aware that Mr. Allum had entered into the Allum Employment Agreement, including through Mr. Allum's and Mr. Kapust's knowledge of the Allum Employment Agreement and of Breathe's practices in requiring its employees to enter into employment agreements.

120.    New Aera, Silverbow, and Inogen intended to cause Mr. Allum to breach the Allum Employment Agreement by, at the least, asserting ownership rights to the Daisy Nozzle Concept and marketing products containing that technology, despite Breathe's clear ownership rights to that technology.

121.    Breathe has been, and will continue to be, harmed by New Aera's, Silverbow's, and Inogen's inducement of Mr. Allum's breach of contract, including by their wrongful assertion of ownership and hindering formal recognition of Breathe's ownership interests in the Silverbow Daisy Nozzle Patents.

122.    New Aera's, Silverbow's, and Inogen's acts of inducement of Mr. Allum's breach of contract are causing irreparable harm to Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

**SIXTH CLAIM FOR RELIEF**

**Tortious Interference with Contract**

**(Against New Aera, Silverbow, and Inogen)**

123.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 122.

124.    Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract, and which required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept.

125.    New Aera, Silverbow, and Inogen were aware that Mr. Allum had entered into the Allum Employment Agreement, including through Mr. Allum's and Mr. Kapust's knowledge of the Allum Employment Agreement and of Breathe's practices in requiring its employees to enter into employment agreements.

126.    New Aera, Silverbow, and Inogen prevented Mr. Allum from assisting Breathe in violation of the Allum Employment Agreement, including by their assertion of the Daisy Nozzle Concept as their own and not Breathe's and by Allum with financial incentives to act in breach of his obligations under the Allum Employment Agreement.

127.    New Aera, Silverbow, and Inogen intended to prevent Mr. Allum's performance of his obligations under the Allum Employment Agreement, including to maintain the perception that Breathe lacks ownership interest in patents and applications that incorporate the Daisy Nozzle Concept.

128.    Breathe has been, and will continue to be, harmed by New Aera's, Silverbow's, and Inogen's conduct in preventing Mr. Allum's performance of his obligations to Breathe, as it has hindered formal recognition of Breathe's ownership interest in patents and applications that incorporate the Daisy Nozzle Concept.

129.    New Aera's, Silverbow's, and Inogen's acts of interference with Mr. Allum's performance of his contractual obligations are causing irreparable harm to Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

### SEVENTH CLAIM FOR RELIEF

### Unfair Competition

### (Against all Defendants)

130.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 129.

131.    Defendants each have engaged, and is engaging in, unfair competition in violation

- 21 -

1    of Cal. Bus. & Prof. Code §§ 17200 to 17210.

2    132.    Defendants misrepresented and continue to misrepresent the true owner of the

3    Daisy Nozzle Concept to the U.S. Patent and Trademark Office and/or to the public.

4    133.    Defendants unfairly incorporated Breathe's Daisy Nozzle Concept into patents and

5    patent applications and in the related New Aera System without permission from Breathe so as to

6    attempt to compete against Breathe *with Breathe's own technology*.

7    134.    Mr. Allum unlawfully failed to assist Breathe in securing formal recognition of its

8    ownership of the Daisy Nozzle Concept and of its interest in patents and applications that

9    incorporate the Daisy Nozzle Concept, and New Aera, Silverbow, and Inogen interfered with

10   such assistance and/or induced such failure.

11   135.    Breathe was harmed by Defendants' unfair competition, as it has hindered formal

12   recognition of Breathe's ownership interest in patents and applications that incorporate the Daisy

13   Nozzle Concept, Breathe's right to practice the Daisy Nozzle Concept, and gave consumers of the

14   New Aera System the false impression that Defendants innovated the Daisy Nozzle Concept.

15   136.    Defendants' continuing acts of unfair competition are causing irreparable harm to

16   Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the

17   appropriate remedy.

18                                **PRAYER FOR RELIEF**

19       WHEREFORE, Breathe respectfully requests the following relief:

20   1.      Judgment in Breathe's favor and against Defendants on all claims for relief alleged

21   herein;

22   2.      An order directing the inventorship of patents that incorporate the Daisy Nozzle

23   Concept to be corrected;

24   3.      Preliminary and permanent injunctive relief including orders from this Court

25   enforcing the Allum Employment Agreement and prohibiting Defendants' wrongful conduct;

26   4.      A declaration of rights as to the true ownership of the Daisy Nozzle Concept and

27   all related patents and patent applications containing that technology;

28   5.      Damages in an amount to be further proven at trial, including trebling of all

damages awarded with respect to infringement of the '250 patent;

6.  Determination that this is an exceptional case;

7.  An award of punitive damages for Defendants' conduct, which is willful, wanton and malicious;

8.  Restitution;

9.  Costs of suit incurred herein;

10.  Prejudgment interest;

11.  Attorneys' fees and costs; and

12.  Such other and further relief as the Court may deem to be just and proper.

**DEMAND FOR JURY TRIAL**

Breathe demands trial by jury for all claims for relies or issues in this action that are triable as a matter of right to a jury.

Dated: November 21, 2019          RILEY SAFER HOLMES & CANCILA LLP


By:  /s/ Stephen M. Hankins
Stephen M. Hankins
Louis A. Klapp (*pro hac vice application forthcoming*)
Michael H. Fleck  (*pro hac vice application forthcoming*)

*Attorneys for Plaintiff*
*BREATHE TECHNOLOGIES, INC.*