RILEY SAFER HOLMES & CANCILA LLP
STEPHEN M. HANKINS (CSB No. 154886)
shankins@rshc-law.com
456 Montgomery Street, 16th Floor
San Francisco, California 94104
Telephone: (415) 275-8550
Facsimile: (415) 275-8551

RILEY SAFER HOLMES & CANCILA LLP
LOUIS A. KLAPP (*pro hac vice*)
lklapp@rshc-law.com
MICHAEL H. FLECK (*pro hac vice*)
mfleck@rshc-law.com
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Facsimile: (312) 471-8701

Attorneys for Plaintiff
BREATHE TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREATHE TECHNOLOGIES, INC., | Case No.  5:19-cv-07691-EJD |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR** |
| v. | 1.   **CORRECTION OF INVENTORSHIP** |
| NEW AERA, INC.; SILVERBOW DEVELOPMENT LLC; INOGEN, INC.; and TODD W. ALLUM, | 2.   **DECLARATION OF RIGHTS IN PATENTS BASED ON CORRECT INVENTORSHIP** |
| Defendants. | 3.   **VIOLATION OF CAL. BUS & PROF. CODE SECTION 17200 BASED ON INVENTORSHIP** |
| | 4.   **DECLARATION OF RIGHTS IN PATENTS BASED ON ALLUM ASSIGNMENT** |
| | 5.   **BREACH OF CONTRACT** |
| | 6.   **INDUCING BREACH OF CONTRACT** |
| | 7.   **INTERFERENCE WITH CONTRACT** |
| | 8.   **VIOLATION OF CAL. BUS & PROF. CODE SECTION 17200 BASED ON ALLUM ASSIGNMENT** |
| | **DEMAND FOR JURY TRIAL** |

1.     Plaintiff Breathe Technologies, Inc. ("Breathe"), by and through its attorneys, and for its Complaint against Inogen, Inc. ("Inogen"), in its own capacity and as the successor in interest of all of New Aera, Inc.'s ("New Aera") liabilities, Silverbow Development LLC ("Silverbow"), and Todd W. Allum (collectively, "Defendants"), hereby alleges as follows:

## I.     INTRODUCTION

2.     This is an action for correction of inventorship of patents, declaration of rights with respect to ownership of patents, breach of contract, inducing breach of contract, tortious interference with contract, and unfair competition.

## II.    PARTIES

3.     Breathe is a Delaware corporation with its principal place of business at 15091 Bake Parkway, Irvine, California. Breathe is a provider of wearable noninvasive ventilation solutions for patients with respiratory disorders.

4.     New Aera was a Delaware corporation that had a principal place of business at 2400 Camino Ramon, Suite 365, San Ramon, California. New Aera was a provider of wearable noninvasive ventilation solutions for patients with respiratory disorders. In or around August 2019, New Aera merged with Inogen.

5.     Silverbow is a Delaware limited liability company with its principal place of business at 2400 Camino Ramon, Suite 365, San Ramon, California. Silverbow was an affiliate of New Aera, and Silverbow claimed ownership of at least one United States Patent related to noninvasive ventilation technology.

6.     Inogen is a Delaware corporation with its principal place of business at 326 Bollay Drive, Goleta, California. New Aera was a wholly owned subsidiary of Inogen. Inogen is the successor in interest to New Aera.

7.     Mr. Allum is an individual and a former employee of Breathe. On information and belief, Mr. Allum resides in Livermore, California and is a current employee of Inogen and of Silverbow.

**III.    JURISDICTION, VENUE, & INTRADISTRICT ASSIGNMENT**

8.     This Court has subject matter jurisdiction over Breathe's claims under United States Patent Laws, Title 35, including 35 U.S.C. § 256, pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has subject matter jurisdiction over Breathe's claims for declaratory judgment of patent ownership pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. The Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367. The Court also has subject matter jurisdiction over Breathe's claims for unfair competition pursuant to 28 U.S.C. § 1338(b).

9.     Silverbow and Mr. Allum reside in this judicial district. New Aera, then Inogen, resided in this judicial district through their place of business in San Ramon, until that location was closed in 2019 after New Aera merged into Inogen. All Defendants are residents of the State of California. In addition, a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in Contra Costa County, which is in this judicial district. Therefore, venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

10.    A substantial part of the events giving rise to the claims alleged in this Complaint occurred in Contra Costa County. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this intellectual property action will be assigned on a districtwide basis.

**IV.    FACTUAL ALLEGATIONS**

**A.    Breathe's Noninvasive Ventilation System**

11.    Breathe developed the first truly wearable ventilator system, which is used by patients suffering from certain respiratory conditions such as chronic obstructive pulmonary disease. The system provided mechanical ventilation while allowing the patient to be mobile and to engage in activities of daily living.

12.    A range of respiratory disorders afflict patients. More severe forms of such disorders require mechanical ventilation (MV) therapies, which mechanically contribute to the work of breathing. Less severe forms can be treated by oxygen therapies, which provide air with a

- 3 -

higher-than-normal concentration of oxygen to the patient, but which do not mechanically contribute to the work of breathing.

13.     Traditional MV therapies are obtrusive and/or invasive to the patient. For example, some include a mask that seals over a patient's nose and mouth and deliver gas to the mask through large tubing connected to a stationary ventilator. While receiving this treatment, the patient must be immobile, and thus cannot reasonably engage in activities of daily living. Relative to MV therapies, oxygen therapy is less obtrusive, and a patient can receive it while mobile. But it is helpful only to patients with less severe disorders, as it does not contribute to the mechanical work of breathing.

14.     Breathe pioneered a system with the functionality of traditional MV therapies but with the mobility of traditional oxygen therapies.

15.     Today, Breathe's noninvasive ventilation system ("Breathe System") is available in several configurations, each of which incorporates (i) a Breathe ventilator; (ii) a source of compressed gas, such as Breathe's compressor; and (iii) a Breathe patient interface.

16.     Today's Breathe System was created by Breathe over years of research and development activity.

17.     Breathe was founded in 2005. Gregory Kapust served as Breathe's Chief Executive Officer.

18.     By 2008, Breathe was focused on developing new solutions for noninvasive ventilation. In 2008, Breathe hired engineering personnel, including Mr. Allum, to advance Breathe's noninvasive ventilation goals. Mr. Allum was the Mechanical Engineering Manager at Breathe.

**B.     Breathe's Nozzle Research**

19.     In or around 2010 and 2011, Breathe investigated nozzle designs and configurations that could offer desirable noise-reduction and entrainment performance ("the Nozzle Project"). The Nozzle Project included research and development related to the incorporation of a so-called "daisy nozzle" in a small, noninvasive ventilation interface.

20.     All inventions, developments, improvements, designs, and discoveries conceived during the Nozzle Project, including those related to the incorporation of a daisy nozzle ("Daisy Nozzle Concept"), belonged to Breathe.

21.     Several Breathe employees and consultants worked on Breathe's Nozzle Project, including Mr. Allum and Richard Lyon. Dr. Lyon was a Breathe consultant, acoustics expert, and professor emeritus of mechanical engineering at the Massachusetts Institute of Technology.

22.     The Daisy Nozzle Concept was jointly conceived, developed, and reduced to practice during the Nozzle Project by at least Mr. Allum and Dr. Lyon.

23.     The relevant employees and consultants who worked on the Nozzle Project, including Dr. Lyon and Mr. Allum, assigned any and all of their respective rights in the Daisy Nozzle Concept to Breathe via their employment or consulting agreements with Breathe.

24.     Breathe has the exclusive right to determine whether, when, and how to seek patent claims incorporating the Daisy Nozzle Concept and to determine whether, when, and how to incorporate the Daisy Nozzle Concept into a commercial product.

**C.     Mr. Allum's Employment Agreement With Breathe and Dr. Lyon's Consulting Agreement With Breathe**

25.     Todd Allum was employed by Breathe from June 2008 to September 2011.

26.     On June 16, 2008, Mr. Allum entered into an At Will Employment Confidential Information, Invention Assignment, and Arbitration Agreement with Breathe ("Allum Employment Agreement"). A copy of the Allum Employment Agreement is attached as Exhibit 1.

27.     By signing the Allum Employment Agreement, Mr. Allum assigned to Breathe all inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during the Nozzle Project.

28.     By signing the Allum Employment Agreement, Mr. Allum agreed to assist Breathe in securing Breathe's rights in the Daisy Nozzle Concept, including signing any instruments Breathe deemed necessary in order to secure such rights. Mr. Allum agreed that his obligation to execute such instruments would continue after the termination of his employment with Breathe.

29.     On October 6, 2010, Dr. Lyon entered into a Consulting Agreement with Breathe ("Lyon Consulting Agreement"). A copy of the Lyon Consulting Agreement is attached as Exhibit 2.

30.     By signing the Lyon Consulting Agreement, Dr. Lyon assigned to Breathe all inventions, developments, improvements, designs, and discoveries conceived, discovered, developed or reduced to practice by him, solely or in collaboration with others, during the Nozzle Project.

31.     The employment and consulting agreements of the relevant employees and consultants who worked on the Nozzle Project other than Mr. Allum and Dr. Lyon contained invention assignment clauses substantially similar to those in Mr. Allum's or Dr. Lyon's agreements.

32.     The Daisy Nozzle Concept is an invention, development, improvement, design, or discovery conceived during the Nozzle Project.

**D.      New Aera, Silverbow, and Inogen's Purported Noninvasive Ventilation Products and Technology**

33.     Mr. Kapust's employment with Breathe ended in June 2010. Mr. Kapust founded or cofounded New Aera and Silverbow in 2011, and he served as Chief Executive Officer of each entity.

34.     Mr. Allum's employment with Breathe ended in September 2011. Mr. Allum became an employee of New Aera and Silverbow in April 2012, and he served as Vice President of Technology of each entity. Mr. Allum was a cofounder of New Aera.

35.     In 2018, New Aera brought to market a noninvasive ventilator system sold in conjunction with the phrase Sidekick TAV Tidal Assist Ventilator ("TAV System"). The TAV System's commercial release was announced at the May 16–18, 2018, Conference of the California Society of Pulmonary Rehabilitation in San Diego, California. The following image is the introductory frame of a video posted by SIDEKICK TAV to YouTube, available at https://www.youtube.com/watch?v=kuVLicrR6HM:

1
2
3
4
5
6
7
8



9       36.      Certain patients (e.g., those capable of spontaneous breathing) who have been

10  prescribed a portable ventilator system by their treating physician could be furnished with either

11  the TAV System or the Breathe System. Although the Breathe System, unlike the TAV System, is

12  designed and covered by insurance for use by patients incapable of spontaneous breathing, the

13  Breathe System is also prescribed for, covered by insurance for, and able to be used by, the same

14  patients capable of spontaneous breathing who could use the TAV System. Under these

15  circumstances, such patients use, and medical suppliers sell, the TAV System as an alternative to

16  the Breathe System.

17      37.      Silverbow has filed patent applications that, on information and belief, sought to

18  patent inventions purportedly related to Mr. Allum's and Mr. Kapust's work developing the TAV

19  System.

20      38.      For example, on August 20, 2019, the United States Patent and Trademark Office

21  issued U.S. Patent No. 10,384,028 ("the '028 patent"), which listed Todd W. Allum and Gregory

22  J. Kapust as the purported inventors and listed Silverbow Development, LLC as the purported

23  assignee.

24      39.      On February 12, 2019, U.S. Patent Application No. 16/275,255 ("the '255

25  application") was filed as a continuation of the application giving rise to the '028 patent. The

26  disclosure of the '255 application is substantially the same as the disclosure of the '028 patent.

27  Mr. Kapust and Mr. Allum are listed as inventors of the '255 application. According to USPTO

28  records, Silverbow Development, LLC was the purported assignee of the '255 application.

40.     On June 12, 2018, the United States Patent and Trademark Office issued U.S. Patent No. 9,995,645 ("the '645 patent"), which listed Todd W. Allum as the purported inventor and listed Silverbow Development, LLC as the purported assignee.

41.     On June 12, 2018, U.S. Patent Application No. 16/006,699 ("the '699 application) was filed as a continuation of the application giving rise to the '645 patent. The disclosure of the '699 application is substantially the same as the disclosure of the '645 patent. The '699 application lists Todd W. Allum as the purported inventor. According to USPTO records, Silverbow Development, LLC was the purported assignee of the '699 application.

42.     The '028 patent, the '255 application, the '645 patent, and the '699 application, and any other purported patents that incorporate Breathe's Daisy Nozzle Concept are collectively referred to as "the Daisy Nozzle Patents."

43.     Breathe regularly monitored public patent databases, including for activities of companies Breathe had identified as sources of actual or potential competing technologies. According to public records, Silverbow has never made, sold, or marketed any products. Breathe began monitoring patent activity related to Silverbow, Mr. Allum, and Mr. Kapust on November 24, 2015, one day after a Breathe employee discovered a published Silverbow patent application.

44.     Pursuant to an August 6, 2019, Agreement and Plan of Merger ("New Aera Acquisition Agreement"), New Aera became a wholly owned subsidiary of Inogen. Later that month, New Aera merged into Inogen, and Inogen assumed all liabilities of New Aera.

45.     In conjunction with the performance of the New Aera Acquisition Agreement, Inogen and Silverbow executed an IP Acquisition Agreement. On August 8, 2019, Silverbow executed an assignment assigning all its rights, titles, and interest in certain Silverbow patents and patent applications, including the '028 patent, the '255 application, the '645 patent, and the '699 application, to Inogen. On December 9, 2019, Inogen recorded the assignment with the USPTO. Upon information and belief, Inogen continues to file and prosecute patent applications incorporating Breathe's Daisy Nozzle Concept.

**E.   Inogen's Purported Patents and the TAV System Use Breathe's Daisy Nozzle Concept**

46.   The image below shows a drawing from notes distributed to Breathe's employees on or around March 9, 2011, including to Mr. Allum, from Dr. Lyon as part of the Nozzle Project.



47.   Numerous Inogen patents and patent applications that Inogen acquired from Silverbow incorporate Breathe's Daisy Nozzle Concept.

48.   For example, the claims of Inogen's purported '028 patent and '255 application comprise the Daisy Nozzle Concept. Claim 1 of the '028 patent is reproduced below:

> A nasal interface apparatus for use with a respiratory device that doses compressed gas from a compressed gas source, the apparatus comprising:
>
> a pair of hub assemblies for receiving the compressed gas, each hub assembly having a plurality of air apertures through which ambient air is permitted to flow and a plurality of openings configured to deliver the compressed gas within an outlet flow area defined along a perimeter that runs proximate to the plurality of air apertures such that substantially all of the compressed gas is delivered along the perimeter;
>
> and a pair of nasal pillows, wherein each nasal pillow has a tubular structure with a first end and a second end, and wherein a respective hub assembly is positioned within the first end of each nasal pillow.

49.   The image below is a figure from the '028 patent and the '255 application showing the gas delivery openings of an embodiment disclosed in that patent and application.



50.    The claims of Inogen's purported '645 patent and '699 application comprise the Daisy Nozzle Concept. For example, claim 14 of the '645 patent recites "wherein the at least one outlet disc includes a plurality of outlet holes through which buffered gas escapes for delivery to the user."

51.    The image below is a figure from the '645 patent and the '699 application showing the gas delivery openings of an embodiment disclosed in that patent and application.



52.    The TAV System comprises the Daisy Nozzle Concept.

53.    The image below shows the gas delivery openings in the TAV System's Nasal Pillow Interface.



54.     New Aera and Silverbow knew that Mr. Allum had entered into the Allum Employment Agreement while employed at Breathe, and they knew that the agreement caused Mr. Allum to assign to Breathe all inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during the Nozzle Project, including the Daisy Nozzle Concept. For example, Mr. Allum was an executive at New Aera and Silverbow, and Mr. Allum was aware of his own agreement with Breathe. As another example, Mr. Kapust was an executive at New Aera and Silverbow, knew that Mr. Allum was previously an employee at Breathe, knew that Mr. Allum signed the Allum Employment Agreement, and was aware of Breathe's practice of requiring its employees to sign employment agreements with terms the same as or substantially similar to those in the Allum Employment Agreement.

55.     On information and belief, New Aera and Silverbow had incentives to patent and bring a product to market as quickly and as cheaply as possible, and in a manner that would maximize the value of the companies which created time pressures and financial incentives that caused Mr. Allum to incorporate Breathe's Daisy Nozzle Concept into the Daisy Nozzle Patents and the TAV System.

56.     On information and belief, New Aera and Silverbow gave Mr. Allum financial benefits stemming from the time and cost savings realized through the incorporation of the Daisy Nozzle Concept.

57.     Inogen purchased New Aera after Breathe's Daisy Nozzle Concept was incorporated into the Daisy Nozzle Patents and the TAV System. Public records reflect that Inogen paid approximately $70,000,000 to acquire New Aera, and, on information and belief, Mr. Allum received a portion of that amount. On information and belief, New Aera would not have been purchased or would have been purchased at a lower amount had the Daisy Nozzle Concept not been incorporated in the development of the TAV System and the Daisy Nozzle Patents.

58.     On information and belief, Inogen purchased rights in Silverbow's purported intellectual property, including the Daisy Nozzle Patents, after Breathe's Daisy Nozzle Concept was incorporated into the Daisy Nozzle Patents. On information and belief, Mr. Allum received a portion of that amount. On information and belief, Silverbow's purported intellectual property would not have been purchased or would have been purchased at a lower amount had the Daisy Nozzle Concept not been used in the development of Silverbow's purported intellectual property.

**F.      Mr. Allum breached his contractual duty to assist Breathe in securing its ownership interests in the Daisy Nozzle Patents**

59.     Prior to the filing of this Complaint, pursuant to the Allum Employment Agreement, Breathe sent Mr. Allum a request to sign documentation Breathe deemed necessary to confirm its rights in the Nozzle Project and secure its rights in the Daisy Nozzle Patents and any inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during the Nozzle Project. Mr. Allum has not executed and returned the documentation in breach of his contractual obligations.

60.     On information and belief, New Aera, Silverbow, and Inogen encouraged and instructed Mr. Allum to act in a fashion inconsistent with his contractual obligations which have contributed to his aforementioned breaches of the Allum Employment Agreement.

**FIRST CLAIM FOR RELIEF**

**Correction of Inventorship of U.S. Patents Purportedly owned by Inogen**

**(Against Inogen)**

61.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 60.

- 12 -

62.     Inogen is the current assignee of patents that have claims incorporating the Daisy Nozzle Concept, including the Daisy Nozzle Patents, which fail to identify the correct inventors.

63.     At least the '028 and '645 patents incorporate the Daisy Nozzle Concept.

64.     At least Dr. Lyon collaborated with Mr. Allum in jointly conceiving, developing, and reducing to practice the Daisy Nozzle Concept during the Nozzle Project prior to the filing of the applications that led to the issuance of the '028 and '645 patents.

65.     Correction of inventorship is necessary at least because Dr. Lyon's contributions to the '028 and '645 patents were material, so he should have been included as a named inventor on the '028 patent, the '645 patent, and any other purported Silverbow patents that incorporate the Breathe Daisy Nozzle Concept, but he was not.

66.     This Court should issue an order pursuant to 35 U.S.C. § 256 directing the Director of the United States Patent and Trademark Office to correct the inventorship of the Daisy Nozzle Patents and any other patent that includes a claim incorporating the Breathe Daisy Nozzle Concept.

## SECOND CLAIM FOR RELIEF

**Declaratory Relief – Rights to Daisy Nozzle Patents Based on Correct Inventorship**

**(Against Inogen)**

67.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 66.

68.     The '028 patent issued on August 20, 2019. On August 8, 2019, Silverbow assigned its purported rights in the '028 patent to Inogen.

69.     On February 12, 2019, the '255 application was filed as a continuation of the application giving rise to the '028 patent. On August 8, 2019, Silverbow assigned its purported rights in the '255 application to Inogen.

70.     On June 12, 2018, the United States Patent and Trademark Office issued the '645 patent. On August 8, 2019, Silverbow assigned its purported rights in the '645 Patent to Inogen.

71.     On June 12, 2018, the '699 application was filed as a continuation of the application giving rise to the '645 patent. On August 8, 2019, Silverbow assigned its purported rights in the '699 application to Inogen.

72.     The Daisy Nozzle Patents, including the '028 patent, the '255 application, the '645 patent, and the '699 application, incorporate Breathe's Daisy Nozzle Concept.

73.     The Daisy Nozzle Concept was jointly conceived, developed, and reduced to practice during the Nozzle Project by at least Dr. Lyon.

74.     Dr. Lyon assigned to Breathe all inventions, developments, improvements, designs, and discoveries conceived, discovered, developed or reduced to practice by him, solely or in collaboration with others, during the Nozzle Project.

75.     The Daisy Nozzle Concept is an invention, development, improvement, design, or discovery conceived during the Nozzle Project.

76.     An actual controversy exists between Breathe on the one hand and Inogen on the other with respect to ownership of each Daisy Nozzle Patent. Breathe contends that Breathe is a rightful owner of each Daisy Nozzle Patent, and Inogen disputes this contention at the very least by asserting its exclusive rights to the Daisy Nozzle Patents.

77.     Breathe is entitled to a declaration that Breathe is an owner of the Daisy Nozzle Patents.

78.     Breathe is also entitled to an order that Inogen execute any necessary documents to confirm formally Breathe's ownership and clarify the chain of title of the Daisy Nozzle Patents.

### THIRD CLAIM FOR RELIEF

### Unfair Competition Based on Inventorship

### (Against Silverbow and Inogen)

79.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 78.

80.     Inogen, Silverbow, and New Aera each have engaged, and is engaging in, unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 to 17210.

- 14 -

81.     Defendants misrepresented and continue to misrepresent the true owner and innovators of the Daisy Nozzle Concept to the U.S. Patent and Trademark Office and/or to the public, including by failing to acknowledge Dr. Lyon's inventorship and Breathe's ownership of the Daisy Nozzle Concept.

82.     Defendants unfairly incorporated Breathe's Daisy Nozzle Concept into patents and patent applications and in the related TAV System without permission from Breathe so as to attempt to compete against Breathe *with Breathe's own technology* while failing to credit Dr. Lyon as an inventor or Breathe as an owner of the patents and patent applications.

83.     Breathe was harmed by Defendants' unfair competition, as it has hindered formal recognition of Breathe's ownership interest in patents and applications that incorporate the Daisy Nozzle Concept, Breathe's right to practice the Daisy Nozzle Concept, and gave consumers of the TAV System the false impression that Defendants innovated the Daisy Nozzle Concept and Breathe did not.

84.     Defendants' continuing acts of unfair competition are causing irreparable harm to Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief – Rights to Daisy Nozzle Patents Based on Allum Assignment

### (Against Inogen)

85.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 84.

86.     The Daisy Nozzle Patents, including the '028 patent, the '255 application, the '645 patent, and the '699 application, incorporate Breathe's Daisy Nozzle Concept.

87.     The '028 patent issued on August 20, 2019. Mr. Kapust and Mr. Allum are listed as inventors of the '028 patent. On August 8, 2019, Silverbow assigned its purported rights in the '028 patent to Inogen.

88.     On February 12, 2019, the '255 application was filed as a continuation of the application giving rise to the '028 patent. Mr. Kapust and Mr. Allum are listed as inventors of the

'255 application. On August 8, 2019, Silverbow assigned its purported rights in the '255 application to Inogen.

89.     On June 12, 2018, the United States Patent and Trademark Office issued the '645 patent, which listed Todd W. Allum as the purported inventor. On August 8, 2019, Silverbow assigned its purported rights in the '645 Patent to Inogen.

90.     On June 12, 2018, the '699 application was filed as a continuation of the application giving rise to the '645 patent. The '699 application lists Todd W. Allum as the purported inventor. On August 8, 2019, Silverbow assigned its purported rights in the '699 application to Inogen.

91.     Mr. Allum is listed as a named inventor of each of the Daisy Nozzle Patents.

92.     The Daisy Nozzle Patents incorporate Breathe's Daisy Nozzle Concept.

93.     Mr. Allum solely or jointly conceived, developed, or reduced to practice the Daisy Nozzle Concept while employed at Breathe. Pursuant to the Allum Employment Agreement, the Daisy Nozzle Concept automatically transferred from Mr. Allum to Breathe.

94.     Because all of Mr. Allum's rights to the Daisy Nozzle Patents were automatically assigned to Breathe pursuant to the Allum Employment Agreement, Breathe is the rightful owner of the Daisy Nozzle Patents.

95.     An actual controversy exists between Breathe on the one hand and Inogen on the other with respect to ownership of each Daisy Nozzle Patent. Breathe contends that Breathe is a rightful owner of each Daisy Nozzle Patent, and Inogen disputes this contention at the very least by asserting its exclusive rights to the Daisy Nozzle Patents.

96.     Breathe is entitled to a declaration that Breathe is an owner of the Daisy Nozzle Patents.

97.     Breathe is also entitled to an order that Inogen or Mr. Allum execute any necessary documents to confirm formally Breathe's ownership and clarify the chain of title of the Daisy Nozzle Patents.

- 16 -

**FIFTH CLAIM FOR RELIEF**

**Breach of Contract**

**(Against Mr. Allum)**

98.     Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 97.

99.     Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract.

100.    Breathe performed all or substantially all its obligations under the Allum Employment Agreement, including compensating Mr. Allum for his employment.

101.    The Allum Employment Agreement required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept, and Mr. Allum has failed to do so.

102.    Breathe was harmed by Mr. Allum's breach of contract, as it has hindered formal recognition of Breathe's ownership interest in the Daisy Nozzle Patents.

103.    Mr. Allum's failure to perform his obligations under the Allum Employment Agreement has caused and continues to cause irreparable harm to Breathe, for which monetary compensation alone is insufficient, and for which injunctive relief, including an order compelling specific performance, is the appropriate remedy.

**SIXTH CLAIM FOR RELIEF**

**Inducing Breach of Contract**

**(Against Silverbow and Inogen)**

104.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 103.

105.    Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract, and which required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept.

106.    New Aera, Silverbow, and Inogen were aware that Mr. Allum had entered into the Allum Employment Agreement, including through Mr. Allum's and Mr. Kapust's knowledge of

- 17 -

the Allum Employment Agreement and of Breathe's practices in requiring its employees to enter into employment agreements.

107.    New Aera, Silverbow, and Inogen intended to cause Mr. Allum to breach the Allum Employment Agreement by, at the least, asserting ownership rights to the Daisy Nozzle Concept and marketing products containing that technology, despite Breathe's clear ownership rights to that technology.

108.    Breathe has been, and will continue to be, harmed by New Aera's, Silverbow's, and Inogen's inducement of Mr. Allum's breach of contract, including by their wrongful assertion of ownership and hindering formal recognition of Breathe's ownership interests in the Daisy Nozzle Patents.

109.    New Aera's, Silverbow's, and Inogen's acts of inducement of Mr. Allum's breach of contract are causing irreparable harm to Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

**SEVENTH CLAIM FOR RELIEF**

**Tortious Interference with Contract**

**(Against Silverbow and Inogen)**

110.    Breathe incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 109.

111.    Breathe and Mr. Allum entered into the Allum Employment Agreement, which was and is a valid and enforceable contract, and which required Mr. Allum to assist Breathe in securing its rights in any patents incorporating the Daisy Nozzle Concept.

112.    New Aera, Silverbow, and Inogen were aware that Mr. Allum had entered into the Allum Employment Agreement, including through Mr. Allum's and Mr. Kapust's knowledge of the Allum Employment Agreement and of Breathe's practices in requiring its employees to enter into employment agreements.

113.    New Aera, Silverbow, and Inogen prevented Mr. Allum from assisting Breathe in violation of the Allum Employment Agreement, including by their assertion of the Daisy Nozzle Concept as their own and not Breathe's and by Allum with financial incentives to act in breach of

1    his obligations under the Allum Employment Agreement.

2         114.    New Aera, Silverbow, and Inogen intended to prevent Mr. Allum's performance of

3    his obligations under the Allum Employment Agreement, including to maintain the perception

4    that Breathe lacks ownership interest in patents and applications that incorporate the Daisy

5    Nozzle Concept.

6         115.    Breathe has been, and will continue to be, harmed by New Aera's, Silverbow's,

7    and Inogen's conduct in preventing Mr. Allum's performance of his obligations to Breathe, as it

8    has hindered formal recognition of Breathe's ownership interest in patents and applications that

9    incorporate the Daisy Nozzle Concept.

10        116.    New Aera's, Silverbow's, and Inogen's acts of interference with Mr. Allum's

11   performance of his contractual obligations are causing irreparable harm to Breathe, for which

12   monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

13                          **EIGHTH CLAIM FOR RELIEF**

14                       **Unfair Competition Based on Allum**

15                            **(Against all Defendants)**

16        117.    Breathe incorporates by reference, as if fully set forth herein, each of the

17   allegations set forth in paragraphs 1 through 116.

18        118.    Defendants each have engaged, and is engaging in, unfair competition in violation

19   of Cal. Bus. & Prof. Code §§ 17200 to 17210.

20        119.    Defendants misrepresented and continue to misrepresent the true owner and

21   innovator of the Daisy Nozzle Concept to the U.S. Patent and Trademark Office and/or to the

22   public, including by failing to acknowledge that the Daisy Nozzle Concept was innovated while

23   Mr. Allum while employed at Breathe.

24        120.    Defendants unfairly incorporated Breathe's Daisy Nozzle Concept into patents and

25   patent applications and in the related TAV System without permission from Breathe so as to

26   attempt to compete against Breathe *with Breathe's own technology*.

27        121.    Mr. Allum unlawfully failed to assist Breathe in securing formal recognition of its

28   ownership of the Daisy Nozzle Concept and of its interest in patents and applications that

incorporate the Daisy Nozzle Concept, and New Aera, Silverbow, and Inogen interfered with such assistance and/or induced such failure.

122.    Breathe was harmed by Defendants' unfair competition, as it has hindered formal recognition of Breathe's ownership interest in patents and applications that incorporate the Daisy Nozzle Concept, Breathe's right to practice the Daisy Nozzle Concept, and gave consumers of the TAV System the false impression that Defendants innovated the Daisy Nozzle Concept.

123.    Defendants' continuing acts of unfair competition are causing irreparable harm to Breathe, for which monetary compensation is insufficient, and for which injunctive relief is the appropriate remedy.

## PRAYER FOR RELIEF

WHEREFORE, Breathe respectfully requests the following relief:

1.    Judgment in Breathe's favor and against Defendants on all claims for relief alleged herein;

2.    An order directing the inventorship of patents that incorporate the Daisy Nozzle Concept to be corrected;

3.    Preliminary and permanent injunctive relief including orders from this Court enforcing the Allum Employment Agreement and prohibiting Defendants' wrongful conduct;

4.    A declaration of rights as to the true ownership of the Daisy Nozzle Concept and all related patents and patent applications containing that technology;

5.    Damages in an amount to be further proven at trial;

6.    Determination that this is an exceptional case;

7.    An award of punitive damages for Defendants' conduct, which is willful, wanton and malicious;

8.    Restitution;

9.    Costs of suit incurred herein;

10.    Prejudgment interest;

11.    Attorneys' fees and costs; and

12.    Such other and further relief as the Court may deem to be just and proper.

1

**DEMAND FOR JURY TRIAL**

2       Breathe demands trial by jury for all claims for relies or issues in this action that are

3   triable as a matter of right to a jury.

4

5

6   Dated: March 31, 2020                RILEY SAFER HOLMES & CANCILA LLP

7

8                                        By:  /s/ Stephen M. Hankins

9                                            Stephen M. Hankins
                                             Louis A. Klapp (*pro hac vice*)
                                             Michael H. Fleck (*pro hac vice*)

10

11                                           *Attorneys for Plaintiff*
                                             *BREATHE TECHNOLOGIES, INC.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that I caused the above document to be electronically filed with the Clerk

3   of Court using the CM/ECF system, which will send notification of such filing to all counsel of

4   record in the above-captioned matter.

5

6   Dated:  March 31, 2020                                    */s/ Stephen M. Hankins*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT