UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BREATHE TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW AERA, INC., et al.,<br><br>Defendants. | Case No.  5:19-cv-07691-EJD<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 55, 56 |

Before the Court is Defendant Inogen, Inc. ("Inogen") and Defendant Todd W. Allum's Motion to Dismiss, Compel Arbitration, and Stay.  Dkt. No. 56 ("Motion to Compel").  Defendant Silverbow Development LLC ("Silverbow," and collectively with Inogen and Allum, "Defendants") filed a Joinder in the Motion as well as a separate Motion to Dismiss First Amended Complaint for Lack of Subject-Matter Jurisdiction.  Dkt. No. 55 ("Silverbow Motion to Dismiss").  Plaintiff Breathe Technologies, Inc. ("Breathe" or "Plaintiff") opposes both motions.  Dkt. Nos. 59, 60.  The Court took the matter under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons below, Defendants' Motion to Compel is GRANTED.  Silverbow's Motion to Dismiss is DENIED as moot.

**I.   Background**

Plaintiff Breathe and Defendants New Aera, Inc. ("New Aera"), Inogen, and Silverbow are all in the business of providing wearable ventilators for patients with respiratory disorders. Amended Compl., Dkt. No. 48, ¶¶ 3-6.  These systems provide mechanical ventilation while allowing patients to be mobile and engage in activities of daily life.  *Id.* ¶ 12.

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
1

In or around 2008, Breathe began developing new solutions for noninvasive ventilation and hired Defendant Allum, among others, to help advance those goals. *Id.* ¶ 18. Mr. Allum worked with a group of Breathe employees and consultants to design nozzles for Breathe's nasal interface. *Id.* ¶ 19. The project included research and development related to the incorporation of a so-called "daisy nozzle"—a particular design of noninvasive ventilation interface consisting of two "hubs" of air apertures that dose compressed gas positioned within a pair of "nasal pillows." *Id.* ¶¶ 20, 48. Breathe alleges that in 2010 and 2011, the daisy nozzle concept was jointly conceived, developed, and reduced to practice by Mr. Allum and Breathe consultant Dr. Richard Lyon. *Id.* ¶ 22.

Mr. Allum and Breathe had an At Will Employment Confidential Information, Invention Assignment, and Arbitration Agreement with Breathe ("Allum Agreement"), by which Mr. Allum agreed to assign to Breathe all inventions, developments, improvements, designs, and discoveries conceived, developed, or reduced to practice by him, solely or jointly with others, during his employment. *Id.* ¶¶ 26-27. Dr. Lyon had a Consulting Agreement with Breathe ("Lyon Agreement"), which provided the same. *Id.* ¶¶ 29-30. Both Agreements contain substantially similar arbitration clauses, which state, in relevant part:

> "[A]ny and all controversies, claims, or disputes with anyone (including the company . . .) arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration."

Dkt. 48, Ex. 1, § 10(A); Ex. 2, § 10(A). Both Agreements also incorporate the "Arbitration Rules set forth in California Code of Civil Procedure Section 1280 through 1294.2" and are expressly governed by California law. *Id.* at §§ 10(A), 11(A).

Mr. Allum left Breathe in September 2011. Am. Compl. ¶ 34. In or around April 2012, Mr. Allum became the Vice President of Technology at New Aera and its affiliate Silverbow, both of which were cofounded by the former Chief Executive Officer of Breathe, Gregory Kapust. *Id*.

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
2

1  ¶¶ 17, 33-34. In 2018, New Aera brought to market a new ventilator system that, according to
2  Breathe, utilizes the daisy nozzle concept that Mr. Allum developed during his employment at
3  Breathe. *Id.* ¶¶ 37-42. Mr. Allum and Mr. Kapust applied for several patents related to the new
4  ventilator system, incorporating the daisy nozzle concept. *Ibid.* Mr. Allum is listed as the
5  inventor on each of these patents, either alone or with Mr. Kapust, and Silverbow is listed as the
6  assignee. *Id.* ¶¶ 38-41. In 2019, New Aera and Silverbow merged with Inogen and Inogen
7  acquired the rights to the patents.
8        The day before filing this lawsuit, Breathe sent Mr. Allum a letter requesting that he assign
9  certain patents to Breathe, citing a clause in his Employment Agreement that requires him to assist
10 Breathe in securing rights to any inventions or original works Mr. Allum developed while
11 employed at Breathe. *Id.* ¶ 59. Mr. Allum did not act on the letter. *Ibid.* Breathe then brought
12 this lawsuit, alleging the following claims: (1) Correction of Inventorship of U.S. Patents
13 Purportedly owned by Inogen against Inogen; (2) Declaratory Relief as to its "Rights to Daisy
14 Nozzle Patents Based on Correct Inventorship" against Inogen; (3) Unfair Competition Based on
15 Inventorship against Silverbow and Inogen; (4) Declaratory Relief as to its "Rights to Daisy
16 Nozzle Patents Based on Allum Assignment" against Inogen; (5) Breach of Contract against Mr.
17 Allum; (6) Inducing Breach of Contract against Silverbow and Inogen; (7) Tortious Interference
18 with Contract against Silverbow and Inogen; and (8) Unfair Competition Based on Allum against
19 all Defendants. Breathe initially brought a claim for patent infringement against Inogen as well
20 (*see* Original Complaint ¶¶ 83-89) but dropped that claim in the Amended Complaint and instead
21 asserted it in a separate action in the Central District of California.
22       Breathe has two overarching theories of relief: first, if Dr. Lyon contributed to the
23 invention of the daisy nozzle, then he should be listed as an inventor on the related patents and
24 Breathe is a rightful owner of those patents by operation of the automatic assignment clause in the
25 Lyon Agreement. Claims 1-3 (the "Lyon Claims") generally pertain to this theory of relief.
26 Second, if Mr. Allum invented the Daisy Nozzle while working for Breathe, then Breathe is a
27 rightful owner of the related patents by operation of the automatic assignment in the Allum
28 **CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION

1    Agreement, and Mr. Allum breached his agreement by failing to assist Breathe in securing

2    ownership.  Claims 4-8 (the "Allum Claims") generally pertain to this theory of relief.

3         Defendants Inogen and New Aera, joined by Silverbow, filed the present Motion to

4    Dismiss, Compel Arbitration, and Stay arguing (1) Breathe's unfair competition claims should be

5    dismissed because they are preempted by federal intellectual property statutes; (2) all of Breathe's

6    claims should be arbitrated pursuant to the arbitration clauses in both the Allum Agreement and

7    Lyon Agreement; and (3) any claims not subject to arbitration should be stayed until the

8    arbitration is complete.  Mot. to Compel, pp. 21-24.  Defendant Silverbow separately filed a

9    Motion to Dismiss the claims against it, arguing that the Court lacks subject matter jurisdiction

10   because Breathe's seven state law claims predominate over its one federal law claim.  Breathe

11   opposes both motions, arguing primarily that Inogen, New Aera, and Silverbow may not compel

12   arbitration because they are not signatories to the Allum Agreement or the Lyon Agreement.  Dkt.

13   No. 60 ("Opposition").  They further argue that the unfair competition claims are not preempted,

14   that this Court has subject matter jurisdiction over all claims, and that it should exercise its

15   discretion to keep all claims in Federal Court even if certain claims are properly subject to

16   arbitration.

17        Because the Court finds that Breathe's unfair competition claims should be arbitrated, the

18   Court does not consider Defendants' arguments to dismiss those claims.  The preemption issue is

19   more appropriately addressed by the arbitral tribunal.  *See California Trucking Ass'n v. Corcoran*,

20   74 F.R.D. 534, 548 (N.D. Cal. 1977) ("in deferring to arbitration, 'the courts have no business

21   weighing the merits of the grievance.'") (quoting *United Steelworkers of America v. American*

22   *Manufacturing Co.*, 363 U.S. 564, 568 (1960)).

23   **II.    Legal Standard**

24        California law reflects a strong policy in favor of arbitration.  *Lewis v. Fletcher Jones*

25   *Motor Cars, Inc.*, 205 Cal. App. 4th 436, 443 (2012).  To further that policy, California Code of

26   Civil Procedure ("CCP") section 1281.4 requires the court to stay court proceedings subject to

27   arbitration until the arbitration is complete.  CCP §§ 1281.2, 1281.4.  There are limited exceptions

28   **CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
4

found in CCP Section 1281.2. *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1404-05 (2010). California Civil Code Section 1281.2 provides that a court shall grant a petition to compel arbitration unless, among other things, it determines that:

> A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.

Cal. Code Civ. Proc. § 1281.2(c). "Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and "giv[es] the court discretion not to enforce the arbitration agreement under such circumstances." *Hofer v. Emley*, No. 19-CV-02205-JSC, 2019 WL 4575389, at *8 (N.D. Cal. Sept. 20, 2019) (citing *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, 101 Cal. App. 4th 711, 726 (2002)).

If the conditions laid out in 1281.2(c) are satisfied, then the trial court has discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. *Laswell,* 189 Cal. App. 4th at 1405; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.*, 186 Cal.App.4th 696, 709 (2010) ("The court's discretion under section 1281.2 does not come into play until it is ascertained that the subdivision applies"). Specifically, section 1281.2(c) states that the court may: (1) "refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding"; (2) "order intervention or joinder as to all or only certain issues"; (3) "order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding"; and (4) "stay arbitration pending the outcome of the court action or special proceeding." CCP § 1281.2(c).

As the parties seeking to compel arbitration, Defendants have the initial burden of demonstrating that a valid agreement exists to arbitrate the claims at issue and Plaintiff then bears the burden of proving any defense. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
5

622 F.3d 996, 1005 (9th Cir. 2010) (noting that the party seeking to compel arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.") (quoting *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997).

### III. Discussion

The parties do not dispute that the arbitration clauses in the Allum Agreement and the Lyon Agreement are valid and enforceable, nor do they dispute that Inogen and Silverbow are not parties to either of those agreements. Defendants argue that they are permitted to compel arbitration even as non-signatories under the doctrine of equitable estoppel because Plaintiff relies on either the Allum Agreement or the Lyon Agreement to support each of its claims. Plaintiff assumes, without conceding, that equitable estoppel may apply to the Allum Claims. However, it contends that the Lyon Claims are not subject to arbitration and that because those claims will remain in Federal Court, the Court should exercise its discretion to deny the motion to compel entirely under CCP § 1281.2. *See* Opp. at 9-17 (arguing that "even if" the Allum Claims are arbitrable, the Court has discretion to deny the motion to compel under Section 1281.2).

#### A. Equitable Estoppel

"California law permits non-signatories to invoke arbitration agreements in limited circumstances under the doctrine of equitable estoppel." *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017). "The theory behind equitable estoppel is that a plaintiff may not, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* (citing *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)); *see also Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 220 (2009) (same)); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103-04 (9th Cir. 2006) (equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens the contract imposes.").

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
6

1       The parties agree that equitable estoppel applies if either of two conditions are met: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Murphy*, 724 F.3d at 1229 (citation and internal quotation marks omitted). Defendants focus on the first of these two conditions.

As an initial matter, Breathe argues that a non-signatory may only invoke equitable estoppel if the plaintiff's claim is "based on a 'violation' of a 'duty, obligation, term, or condition' of the agreement containing the arbitration clause." Opp. at 5 (quoting *Goldman*, 173 Cal. App. 4th at 230). The *Goldman* court found that there was no basis for equitable estoppel in part because the plaintiff did not allege a violation of the relevant agreement, but also because the claims were not "founded in or even tangentially related to any duty, obligation, term or condition imposed by the operating agreements." *Ibid.* Thus, *Goldman* does not stand for the proposition that equitable estoppel only applies where a claim alleges a violation of the agreement containing the arbitration clause. Rather, *Goldman* makes clear that a non-signatory may invoke equitable estoppel wherever the claim relies on the terms of the agreement, regardless of whether the plaintiff alleges a violation of that agreement. *Id.* at 220 ("if a plaintiff *relies on* the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement.") (emphasis added); *see also In re Henson*, 869 F.3d at 1060 ("for equitable estoppel to apply, [plaintiff's] claims against [defendant] must *rely on* the terms of the Customer Agreement.") (emphasis added); *Murphy*, 724 F.3d at 1230 (defendant not entitled to invoke equitable estoppel where "Plaintiffs' claims against [Defendant] do not *rely on, and are not intertwined with*, the substance of" the relevant agreement) (emphasis added).

Plaintiff does not raise any argument with respect to the Allum Claims, but argues that the

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
7

Defendants may not invoke equitable estoppel to compel arbitration of the Lyon Claims. The Court considers each of Plaintiff's claims in turn to determine whether they rely on, or are founded in and intertwined with, either the Allum Agreement or Lyon Agreement.

### 1. Claim 1 – Correction of Inventorship against Inogen

Plaintiff's first claim seeks a correction of inventorship of the patents owned by Inogen that allegedly incorporate the daisy nozzle concept pursuant to 35 U.S.C. § 256. Plaintiff asserts that Dr. Lyon collaborated with Mr. Allum in jointly conceiving, developing, and reducing to practice the daisy nozzle concept and that Dr. Lyon should have been named as an inventor on certain patents. Defendants argue that Plaintiff's standing to bring a correction of inventorship claim relies on the Lyon Agreement because Breathe's only claim of right to the patent is based on the automatic assignment in the Lyon Agreement, which is only triggered if Dr. Lyon is found to be an inventor. Plaintiff argues that Claim 1 has nothing to do with the Lyon Agreement, but rather involves only the question of who invented the daisy nozzle concept—a question that will not depend on, or in any way involve, the terms of the agreement.

The Court agrees with Plaintiff. Determining who invented the daisy nozzle concept and the relative contributions of Mr. Allum and Dr. Lyon to its development will not require the Court to consider the terms of the Lyon Agreement whatsoever, nor will it depend on the obligations imposed by the agreement. While Breathe may have acquired the rights to raise the inventorship claim by virtue of the agreement, that connection alone does not render the claim "intertwined" with the agreement. *See Murphy*, 724 F.3d at 1230 (holding that plaintiff's claims did not rely on, and were not intertwined with, the "substance of" the relevant agreement, despite the fact that "the existence of the [agreement] [was] a necessary precondition for Plaintiffs' claims."). Because Claim 1 does not rely on and is not intertwined with the Lyon Agreement, there is no basis for equitable estoppel and Defendants may not compel arbitration of this claim.

### 2. Claim 2 – Declaratory Relief against Inogen

Breathe's second claim seeks declaratory relief stating that it is an owner of the patents at issue. Unlike Claim 1, this claim specifically relies on the allegation that "Dr. Lyon assigned to

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
8

Breathe all inventions." Am. Compl. ¶ 74.  Indeed, Breathe acknowledges that Claim 2 "alleges the fulfillment of all terms of the Lyon Agreement." Opp. at 7.  Without the Lyon Agreement, Breathe would have no claim to ownership of the patents, and any determination as to Breathe's ownership will necessarily require consideration of the terms of the agreement.  Thus, the Court finds that Claim 2 relies on, and is intertwined with, the Lyon Agreement such that the non-signatory Defendants may invoke equitable estoppel to enforce the arbitration clause in that agreement.

### 3.  Claim 3 – Unfair Competition against Silverbow and Inogen

Breathe's claim for unfair competition is based on the allegations that "Defendants misrepresented and continue to misrepresent the true owner and innovators" of the daisy nozzle "by failing to acknowledge Dr. Lyon's inventorship and Breathe's ownership" of the invention. Am. Compl. ¶ 81.  As with Claim 2, this claim fundamentally relies on the allegation that Breathe owns the rights to the various patents by operation of the Lyon Agreement.  Unlike Claim 1, Breathe's ownership is substantively intertwined with the claim.  In order to show that Defendants' claim of ownership was misleading for the purpose of establishing unfair competition, Plaintiff must rely on the Lyon Agreement to prove that Breathe is a rightful owner. Thus, the Court finds that Claim 3 relies on the Lyon Agreement and that Defendants may properly assert equitable estoppel to compel arbitration of this claim.

### 4.  Claims 4-8 – the Allum Claims

Plaintiff essentially concedes, and the Court agrees, that the Allum Claims all substantially rely on the Allum Agreement.  Claim 4 requests a declaration that Breathe is the owner of the patents based on the automatic assignment in the Allum Agreement and the claim is therefore subject to arbitration for the same reasons as Claim 2.

The remainder of Breathe's claims are all founded in the allegation that Mr. Allum breached the terms of the Allum Agreement.  Breathe asserts claims for breach of contract (Claim 5), inducing breach of contract (Claim 6), tortious interference with contract (Claim 7), and unfair competition based on Mr. Allum's alleged breach (Claim 8).  These claims will all turn on

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
9

1   whether Mr. Allum breached the terms of his agreement, and therefore, they rely on and are

2   intertwined with the underlying agreement. Given Plaintiff's reliance on the Allum Agreement in

3   asserting these claims, the Court finds that the Defendants may properly invoke equitable estoppel

4   to compel arbitration of Claims 4-8.

### B. Third-Party Litigation Exception

Because Defendants are entitled to compel arbitration of Claims 2-8 under the doctrine of equitable estoppel, California Code of Civil Procedure states that the Court must compel arbitration of those claims, unless an exception applies. CCP § 1281.2 ("[o]n petition of a party to an arbitration agreement . . . the court *shall* order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that" the case falls into one of three limited exceptions") (emphasis added); *Laswell*, 189 Cal. App. 4th at 1404-05 ("A trial court is required to order a dispute to arbitration when the party seeking to compel arbitration proves the existence of a valid arbitration agreement covering the dispute.").

Plaintiff argues that the third party litigation exception under 1281.2 applies because at least one of the claims—Claim 1 against Inogen—will remain in federal court and that claim constitutes a "pending court action . . . with a third party" arising out of the same transaction as the arbitrable claims. Opp. at 10 (quoting CCP § 1281.2). Because all of the claims will necessarily involve a determination of who invented the daisy nozzle concept and when, Plaintiff argues there is a risk of conflicting rulings if the arbitration and this action proceed simultaneously. Thus, Plaintiff argues that the arbitration should be stayed pending the outcome of this case.

Defendants argue that Section 1281.2 does not apply because they are not "third parties" under the law. Defendants assert that they are not third parties because, as discussed above, they have the ability to enforce the agreement through the doctrine of equitable estoppel. A non-signatory to an arbitration agreement is generally considered to be a third party unless it is "bound by" the arbitration agreement. *Cronus Investments, Inc. v. Concierge Servs.*, 107 P.3d 217, 228 (Cal. 2005). Cases in which a non-signatory has been found not to be a third party, including the

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
10

cases Defendants cite, generally involve third party beneficiaries or parties with an agency or similar relationship to a signatory. *See, e.g.*, *Thomas v. Westlake*, 204 Cal. App. 4th 605, 614 (2012) (finding that "a plaintiff's allegations of an agency relationship among defendants is sufficient to allow the alleged agents to invoke the benefit of an arbitration agreement executed by their principal even though the agents are not parties to the agreement."); *Valentine v. Plum Healthcare Grp., LLC*, 37 Cal. App. 5th 1076, 1090 (2019) (finding that decedent's husband did not sign arbitration agreement as decedent's agent and therefore did not bind decedent's successors in interest to arbitration).

Defendants point to *Molecular Analytical Systems*, in which the court held that "where the equitable estoppel doctrine applies, the nonsignatory has a right to enforce the arbitration agreement" and, therefore, "is not a 'third party' within the meaning of section 1281.2(c)." 186 Cal. App. 4th at 717. In that case, however, the Court had determined that the doctrine of equitable estoppel applied to *all* of the plaintiff 's claims and the defendant could compel arbitration of the entire action. That is not the case here. Because Defendants are not entitled to enforce the arbitration agreement as to Claim 1, they are "third parties" under 1281.2(c) with respect to that claim. Thus, the Court finds that this action constitutes a "court action . . . with a third party," which triggers the Court's discretion to stay either the arbitration or the court proceedings under Section 1281.2.

Both parties agree that proceeding with litigation and arbitration simultaneously would be inefficient and would risk contradictory rulings. Given that seven of the eight claims will proceed in arbitration, and in accordance with the strong policy in favor of arbitration under California law, the Court finds it appropriate to stay the litigation pending completion of arbitration. *See* CCP § 1281.2 ("If the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . with a third party as set forth under subdivision (c) . . . the court . . . may order arbitration . . . and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding").

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
11

**IV. Conclusion**

Defendants' Motion to Compel is **GRANTED** and this case shall be stayed pending the outcome of the arbitration. Because all of the claims against Silverbow will be arbitrated, Silverbow's Motion to Dismiss the claims against it is **DENIED** as moot.

The parties shall file a joint status report with the Court within thirty days of the resolution of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: August 17, 2020

EDWARD J. DAVILA
United States District Judge

**CASE NO.: 5:19-CV-07691-EJD**
ORDER GRANTING MOTION TO COMPEL ARBITRATION
12